BEFORE THE NEBRASKA COMMISSION ON
JUDICIAL QUALIFICATIONS

| | | |
|---|---|---|
| In the matter of | ) | JQC No. 2023-022 |
| | ) | Case No. S-26-0214 |
| Candice J. Novak, | ) | |
| Juvenile Court Judge for | ) | PUBLIC REPRIMAND |
| Douglas County, Nebraska. | ) | |

Pursuant to the authority granted in Article V of the Nebraska Constitution and Neb. Rev. Stat. § 24-715 et. seq., and following waiver of Objection to Special Master's Report, the Nebraska Commission on Judicial Qualifications (JQC) hereby issues this Public Reprimand of Judge Candice J. Novak. Its publication is intended to address the specific conduct of the subject judge and to instruct the judiciary concerning similar circumstances. The JQC finds and concludes as follows:

1. Judge Novak is and was at all material times a duly appointed judge for the Separate Juvenile Court for Douglas County, sitting in Omaha, Nebraska.

2. The conduct described herein occurred after Judge Novak's appointment to the bench on November 16, 2020.

3. On October 26, 2022, Judge Novak presided over a juvenile case scheduled to begin at 2 p.m.

4. An attorney appeared for the State and an attorney appeared on behalf of the juvenile.

5. In an off-the-record discussion prior to the hearing, Judge Novak was informed that the juvenile was not going to appear at the hearing. Both attorneys conveyed their position to Judge Novak that they did not wish to proceed without the juvenile present and their concern that the court could not lawfully do so.

6. Judge Novak expressed anger, slammed down her file, and told the attorneys to "figure it out."

7. Judge Novak then commented to her bailiff that the attorneys were wasting her time, so she was going to waste their time and make them wait. Judge Novak left the courtroom.

8. While waiting for Judge Novak to return to the courtroom, the juvenile's attorney sent the State's attorney the following text message: "I literally think she's making us wait because she is mad."

9. Although Judge Novak has asserted she spent her time during the "break" discussing the issues raised in the hearing with her colleagues, the evidence does not support that finding. Specifically, Judge Novak claims she

consulted with another juvenile court judge on the issue of proceeding in the absence of the juvenile.

10. The juvenile court judge allegedly consulted by Judge Novak later testified that no discussions were had with Judge Novak on October 26, 2022.

11. At approximately 2:45 p.m., Judge Novak's bailiff sent the following text to Judge Novak, which corroborates her intention to make the attorneys wait:

> [The State's attorney] stepped in and said they have a plan. I believe he's going to request a capias since [the juvenile] did not show. I know you said you were going to make them wait, I just wanted to let you know what was communicated to me.

12. At approximately 3:30 p.m., Judge Novak returned to the courtroom where the attorneys were still waiting. A brief record was made, absent any explanation for Judge Novak's absence from the courtroom for approximately one hour. The matter was taken under advisement.

13. At approximately 5:51 p.m., the juvenile's attorney sent their boss an email recounting the events at the hearing:

> I had a truancy case set for trial in Judge Novak's courtroom today at 2 pm. My client called the courtroom and spoke with me before going on the record. She stated she was unable to be present as her mom refused to bring her. I told the county attorney who was fine continuing given the circumstances. When we went on the record, the judge had what I can only describe as a 'fit' and refused to continue the hearing. She was demanding the deputy county attorney move forward on the Petition. When [the deputy county attorney] declined she slammed her files, told us to come up with something else, and left the bench. . . . The Judge did not come back for over an hour. . . . [T]he judge clearly disagreed and reacted extremely unprofessionally and had no respect for anyone's time. . . .

14. The Special Master who conducted a hearing in this matter found both attorneys to be extremely credible witnesses, but the same could not be said for Judge Novak.

15. From and after November 16, 2020, Judge Novak took part in numerous text messages with her staff consisting of a court reporter, various bailiffs, and an administrative assistant, all subject to Judge Novak's authority, direction, and control.

16. Judge Novak regularly participated in, permitted, and/or tolerated communications from and with her staff which included disrespectful or vulgar comments, jokes, and insults concerning other court personnel or persons encountered in court. Examples include the following:

A.      Judge Novak referred to another juvenile court judge as a "bimbo" and made comments questioning [the judge's] intelligence and political affiliation;

B.      Judge Novak permitted her court reporter to refer to yet another juvenile court judge as a "pussy" and laughed at the description;

C.      Judge Novak encouraged and joined with her staff in mocking yet another judge and court personnel, including referring to the juvenile court judge as a "little bitch;"

D.      Judge Novak participated in communications with court staff referring to the former Chief Justice as a "dumb ass," "asshole," "lying dumb ass," and "snake;"

E.      Judge Novak participated in communications with court staff that referred to the county court administrator as a "goober" and "boob;"

F.      Judge Novak participated in communications with court staff referring to the state court administrator as an "asshole," "snake," and "[former Chief Justice's] bitch."

17.      Judge Novak permitted, engaged in, and/or tolerated comments with her staff about sexual matters, referring to "hot men" or texting vulgar references or depictions, including a reference to an attorney who appears in court.

18.      The Commission issued a letter to Judge Novak dated July 28, 2023, advising her of the preliminary investigation into her conduct. The letter advised of the allegations at the October 26, 2022, hearing. Judge Novak was also advised of the allegations of regularly participating in and permitting her staff to engage in disrespectful communications. A written response was requested.

19.      The July 28, 2023, letter made specific references to communications among Judge Novak and her staff and included some of the offensive language contained in the text messaging.

20.      Regarding the hearing of October 26, 2022, Judge Novak claimed to the Commission that during her absence from the courtroom, she consulted with a juvenile court judge about the underlying legal issue raised by the proceedings. As indicated above, the specific juvenile court judge testified that this meeting did not occur.

21.      By email dated August 29, 2023, the investigator for the Commission requested that Judge Novak provide "[w]ritten communications with current and former members of her staff - court reporter, bailiff, administrative assistant/secretary and any combination of these - including emails, texts and social media . . . ."

22.      On December 6, 2023, counsel for Judge Novak informed the investigator that Judge Novak would not voluntarily produce the requested text messaging.

23.    The Commission issued a subpoena to Judge Novak on January 4, 2024. The subpoena sought "communications . . . with or between [Judge Novak] and any persons who are or have been members of your judicial staff or any group communications which include any of them."

24.    On May 24, 2024, Judge Novak executed an affidavit stating that Judge Novak's personal cell phones were replaced in December 2022 and August 2023, that the old phones were taken by Judge Novak's husband, that Judge Novak no longer had possession of or access to the old phones, and that the contents of the old phones are not stored or maintained.

25. A formal complaint was filed by the Commission on November 4, 2024, and a Special Master was appointed to conduct an evidentiary hearing in the matter.

26. An evidentiary hearing was conducted on September 15 and 16, 2025, and the Special Master entered a written report on October 9, 2025.

27.    The Special Master's factual findings generally tracked the testimony set forth above. Based on those factual findings, the Special Master found that Judge Novak engaged in conduct prejudicial to the administration of justice that brings the office into disrepute and was in violation of several provisions of the judicial code. The Special Master recommended that the Commission punish Judge Novak accordingly.

28.    The Commission hereby adopts the factual findings of the Special Master and finds that Judge Novak's conduct described above constitutes willful misconduct in office, conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of Article V, § 30 of the Nebraska Constitution and Neb. Rev. Stat. § 24-722, and/or a violation of one or more of the following provisions of the Nebraska Code of Judicial Conduct:

§ 5-301.0. Canon 1. A judge shall uphold and promote the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety.

§ 5-301.1. Compliance with the law. A judge shall comply with the law, including the Code of Judicial Conduct.

§ 5-301.2. Promoting confidence in the judiciary. A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety.

§ 5-302.3. Bias, prejudice, and harassment.

(A) A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

(B) A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

. . . .

§ 5-302.5 (B). A judge shall cooperate with other judges and court officials in the administration of court business.

. . . .

§ 5-302.8 (B). A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, court staff, court officials, and others with whom the judge deals in an official capacity, and shall require similar conduct of lawyers, court staff, court officials, and others subject to the judge's direction and control.

. . . .

§ 5-302.12 (A). Supervisory duties. A judge shall require court staff, court officials, and others subject to the judge's direction and control to act in a manner consistent with the judge's obligations under this Code.

. . . .

§ 5-302.16 (A). A judge shall cooperate and be candid and honest with judicial and lawyer disciplinary agencies.

29. The Commission notes that Judge Novak has waived a hearing in this matter to object to the Special Master's Report and has agreed that the Commission may enter a public reprimand. Judge Novak has no history of prior discipline.

30. Judge Novak is ordered to pay the costs of this matter as set forth in a separate order.

31. Judge Novak is hereby publicly reprimanded.

Dated this 27th day of March 2026.

COMMISSION ON JUDICIAL QUALIFICATIONS

_____
Chief Justice Jeffrey J. Funke, Chair
Commission on Judicial Qualifications